**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **SUZONNE KAKOOLAKI,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **Civil Action No. 3:22-cv-121** |
| | § | |
| **GALVESTON INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| *Defendant.* | | |

## DEFENDANT GALVESTON INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

I.   NATURE AND STAGE OF THE PROCEEDING ....................................................1

II.  ISSUES TO BE RULED UPON .............................................................................2

III. STANDARD OF REVIEW/BURDEN OF PROOF .................................................2

IV.  SUMMARY JUDGMENT FACTS.........................................................................3

V.   SUMMARY OF THE ARGUMENT ......................................................................10

VI.  ARGUMENT AND AUTHORITIES ......................................................................10

      A.   Kakoolaki Cannot Establish a *Prima Facie* Case of Disability Discrimination....................10

      B.   Kakoolaki Cannot Establish that the District Failed to Accommodate Her in Violation of the ADA.........................14

      C.   Kakoolaki's Claim of Direct Discrimination Fails.................16

      D.   Even Assuming Kakoolaki Can Demonstrate a Prima Facie Case of Disability Discrimination, She Cannot Establish that GISD's Reasons for Taking any Adverse Employment Actions Against Her Were Pretextual. ...........17

VII. CONCLUSION.....................................................................................................18

CERTIFICATE OF CONFERENCE ...............................................................................19

CERTIFICATE OF SERVICE .........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amsel v. Texas Water Development Board,*
    464 F. App'x 395 (5th Cir. 2012) .......................................................................................10

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .............................................................................................................3

*Barber v. Nabors Drilling, U.S.A., Inc.,*
    130 F.3d 702 (5th Cir.1997) ...............................................................................................15

*Bennett v. Calabrian Chemicals Corp.,*
    324 F. Supp. 2d 815 (E.D. Tex. 2004) *aff'd,* 126 F. App'x 171 (5th Cir.
    2005) ...................................................................................................................................15

*Boudreaux v. Swift Transp. Co., Inc.,*
    402 F.3d 536 (5th Cir. 2005) ................................................................................................2

*Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.,*
    3 F.3d 922 (5th Cir.1993) ...................................................................................................15

*Brockie v. AmeriPath, Inc.,*
    273 Fed. App'x 375 (5th Cir. 2008) ...................................................................................17

*Brown v. City of Houston,*
    337 F.3d 539 (5th Cir. 2003) ..............................................................................................17

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..............................................................................................................2

*Claiborne v. Recovery Sch. Dist.,*
    690 F. App'x 249 (5th Cir. 2017) ................................................................................. 11, 13

*Cortez v. Raytheon Co.,*
    663 F. Supp. 2d 514 (N.D. Tex. 2009) ...............................................................................15

*E.E.O.C. v. Argo Distribution, LLC,*
    555 F.3d 462 (5th Cir. 2009) ..............................................................................................15

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,*
    730 F.3d 450 (5th Cir. 2013) ........................................................................................ 11, 14

*Johnson v. Ben E. Keith Co.*,
   No. 4:16-CV-1030-A, 2017 WL 3263134 (N.D. Tex. July 28, 2017) ................................... 13

*Jones v. Overnite Transp. Co.*,
   212 F. App'x 268 (5th Cir. 2006) ........................................................................................ 16

*McInnis v. Alamo Cmty. College Dist.*,
   207 F.3d 276 (5th Cir. 2000) ............................................................................................... 10

*Pedroza v. Autozone, Inc.*,
   536 F.Supp.2d 679 (W.D. Tex. 2008) ................................................................................ 15

*Picard v. St. Tammany Par. Hosp.*,
   423 F. App'x 467 (5th Cir.2011) *(per curiam )* ................................................................. 14

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (2003) ............................................................................................................... 17

*Reese v. Anderson*,
   926 F.2d 494 (5th Cir. 1991) ................................................................................................. 3

*Robertson v. Neromedical Ctr.*,
   161 F.3d 292 (5th Cir. 1998) ........................................................................................ 13, 15

*Rodriguez v. Eli Lilly & Co.*,
   820 F.3d 759 (5th Cir. 2016) ............................................................................................... 16

*Silva v. City of Hidalgo, Tex.*,
   575 F. App'x 419 (5th Cir. 2014) ....................................................................................... 14

*Wilson v. Exxon Mobil Corp.*,
   575 Fed. App'x 309 (5th Cir. 2014) ................................................................................... 17

**Statutes**

42 U.S.C. §12111(8) ............................................................................................................... 11

42 U.S.C. § 12112(a) .............................................................................................................. 10

42 U.S.C. § 12112(b)(5) ......................................................................................................... 14

ADA .................................................................................................................................*passim*

Federal Educational Rights and Privacy Act ........................................................................... 7

**Other Authorities**

FED. R. CIV. P. 56(c) ................................................................................................................2

https://tea.texas.gov/about-tea/news-and-multimedia/news-releases/news-
2020/tea-announces-additional-reopening-guidance-including-local-
option-for-an-online-only-start-to-the-2020-21-school-year ...................................................4

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Galveston Independent School District ("GISD" or the "District") moves for summary judgment on all claims asserted by Plaintiff Suzonne Kakoolaki, as follows:

## I.     NATURE AND STAGE OF THE PROCEEDING

GISD is an independent school district located in Galveston County, Texas. Central Middle School ("CMS") is one of the five middle schools in the District. Plaintiff Suzonne Kakoolaki applied for a social studies teaching position at CMS in July 2021. It is undisputed that Plaintiff participated in three interviews for the position. Plaintiff alleges she was offered the position she applied for, but the offer was withdrawn after the District learned of her visual impairment. Plaintiff accuses the District of discriminating against her based on her disability and by not accommodating her in violation of the of the Americans with Disabilities Act ("ADA").

Plaintiff's Complaint is shrouded with conclusory allegations and her assertions are devoid of evidentiary or legal support. GISD moves for summary judgment on all of Plaintiff's claims because she cannot establish a *prima facie* case of disability discrimination. Specifically, Plaintiff cannot establish (i) that she was "otherwise qualified" for the position she applied for; (ii) that the District failed to reasonably accommodate her; or (iii) that the District refused to hire her because of her disability. Additionally, even assuming Plaintiff could establish a *prima facie* case of discrimination, her claims still fail because any adverse employment actions were taken for legitimate business reasons—the District was unable to reach Plaintiff's former supervisor whom she listed as a reference and a more qualified candidate applied for the position of social studies teacher at CMS.

## II.     ISSUES TO BE RULED UPON

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The District's summary judgment motion presents the following issues:

i.      Whether Kakoolaki can establish that the District discriminated against her because of her disability given that she could not perform the essential functions of the job with reasonable accommodations;

ii.     Whether Kakoolaki can establish that the District failed to accommodate her given that she was not qualified for the position she applied for and her requested accommodations were unreasonable as a matter of law;

iii.    Whether Kakoolaki can show direct discrimination by the District based on her disability; and

ii.     Assuming Kakoolaki can establish a *prima facie* case of disability discrimination, whether she can establish that the District's reasons for not hiring her are pretextual.

## III.    STANDARD OF REVIEW/BURDEN OF PROOF

Summary judgment is proper when the pleadings and any evidence on file demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citations omitted).  Although "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact," there is "no express or implied requirement [] that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.* at 323 (emphasis in original); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 54–45 (5th Cir. 2005) ("Swift met [its] burden by asserting in its motion for summary judgment that Boudreaux could not

prove that Swift had breached a duty that it owed to him, and claiming that there 'is an absence of evidence to support the claims that Plaintiff is asserting against Swift.'"). An issue of material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Conclusory assertions are insufficient to raise a genuine issue of material fact precluding summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

## IV.    SUMMARY JUDGMENT FACTS

GISD is an equal opportunity employer and does not discriminate against employees based on any protected classifications. [Exhibit A]. This nondiscriminatory practice extends to all employment decisions, including hiring, advancement, or discharge of employees, compensation, job training, and other terms, conditions and privileges of employment. *Id.* Additionally, GISD's policies provide that employees shall not discriminate on the basis of race, color, ancestry, national origin, sex, handicap or disability, marital status, religion, veteran status, political affiliation, sexual orientations, gender identity, and/or gender expression. *Id.*

Kakoolaki submitted her application and resume for a teaching position at GISD on July 2, 2021. [Dkt. 1, ¶16] Kakoolaki had experience as a student teacher and intern but had not taught a classroom prior to applying at GISD. [Exhibit B]. When Kakoolaki applied, Dr. Monique Lewis served as the Principal of CMS. [Exhibit C, ¶2]. Ms. Stephanie Joseph was the school's Social Studies Instructional Specialist. [Exhibit D, 29:24-30:1] At this time, schools were still dealing with an unprecedented and raging pandemic. [Exhibit C, ¶ 4]. In response to the spread and danger of Covid-19, the Texas Education Agency allowed schools to provide

virtual learning options for students during the 2020-2021 school year.[1] While most students were attending school in person at the end of the 2020-2021 school year, it was still unknown what the 2021-2022 school year would look like as a result of Covid-19. [*Id.*]

In preparing for the 2021-2022 school year, Ms. Joseph contacted Kakoolaki for an interview for the sixth-grade social studies position at CMS. [Exhibit C, ¶3; Exhibit E, 30:1-3] Kakoolaki participated in three virtual interviews for the position at CMS. [Exhibit E, 50:23-51:1]. Kakoolaki's first and second interviews were with Ms. Joseph. [*Id.* at 31:20-24 & 51:11-13]. Kakoolaki's third interview was with both Ms. Joseph and Dr. Monique Lewis. [*Id.* at 69:2-3].

*First Interview*

Kakoolaki's first interview took place on July 6, 2021. [Exhibit F]. At the end of the first interview, Ms. Joseph offered Kakoolaki a contingent job offer that was dependent on Kakoolaki's background and references checking out. [Exhibit E, 37:10-24]. Ms. Joseph typically conducted the reference checks and Human Resources conducted the background checks for applicants. [*Id.* at 38:3-6] Immediately following the zoom interview, in an email dated July 6, 2022, Kakoolaki disclosed her visual impairment to Ms. Joseph. [*Id.* at 40:12-15; Exhibit G]. In this e-mail, Kakoolaki stated how she has "already developed an [sic] employed strategies that have been proven to be highly effective" regarding classroom management. [Exhibit G].

---

[1] https://tea.texas.gov/about-tea/news-and-multimedia/news-releases/news-2020/tea-announces-additional-reopening-guidance-including-local-option-for-an-online-only-start-to-the-2020-21-school-year

On July 7, 2021, *after learning about her disability,* Ms. Joseph emailed Kakoolaki's references including Dr. Pollock, who was listed as the Principal of Garden Oaks Montessori and supervisor for Kakoolaki. [Exhibit H; Exhibit I]. On July 9, 2021, Kakoolaki sent another e-mail to Ms. Joseph, stating an assumption that she sensed "some concerns on [Joseph's] part and I totally understand, but please understand that I have already proven myself as a successful classroom manager and teacher." [Exhibit J]. However, Kakoolaki had never managed her own classroom prior to her interview with GISD. [Exhibit B; Exhibit K, 79:1-7]. In fact, Kakoolaki was supervised at all times during her internships. [Exhibit K, 26:15-27:23].

*Second Interview*

On July 12, 2021, *six days after being made aware of her disability,* Ms. Joseph interviewed Kakoolaki for a second time. [Exhibit E, 52:18-20]. During this interview, Ms. Joseph obtained more information regarding Kakoolaki's visual impairment and how Kakoolaki would be able to perform in a classroom. [*Id.* at 52:23-53:5]. Ms. Joseph asked Kakoolaki questions about her references because she was having trouble getting in touch with Dr. Pollock, the principal of Garden Oaks Elementary where Kakoolaki completed her student teaching requirement. [*Id.* at 59:19-60:24 & 62:13-18]. After the second interview, Ms. Joseph requested to interview Kakoolaki a third time in order for Dr. Lewis to participate and meet Kakoolaki. [*Id.* at 57:22-58:8].

*Third Interview*

On July 22, 2021, *after informing Dr. Lewis about Kakoolaki's disability,* Ms. Joseph and Dr. Lewis participated in the third interview of Kakoolaki. [*Id.* at 44:3-6 & 68:11-14]. The third

interview consisted of reviewing the job description, a document entitled "Classroom and Campus Non-Negotiables," the professional standards for the District, and "I Said Yes" documents. [Exhibit E, 83:20-84:11; Exhibit L]. These documents contained information regarding the essential functions of the position of social studies teacher, including responsibilities for classroom management and safety and security, as well as teacher standards and expectations. [*Id.*]

*The Essential Functions of the Job and Plaintiff's Response*

During this third interview, Ms. Joseph and Dr. Lewis briefed the expectations and responsibilities of a CMS teacher with Kakoolaki. [Exhibit K, 53:5-14]. The job description has five specific topics under "Major Responsibilities and Duties" that include instructional strategies, student growth and development, classroom management and organization, communication, and professional growth and development. [Exhibit M].

At the end of the interview, Ms. Joseph had the impression Kakoolaki felt "unsure" with the information presented to her. [Exhibit E, 69:21-71:14]. Kakoolaki testified she was "thinking of what [she] was going to need to fulfill some of the essential functions." [Exhibit K, 55:17-22]. Kakoolaki requested to have the job description and the "Classroom & Campus Non-Negotiables" documents sent to her via e-mail so she could review them independently. [*Id.* at 55:12-16].

During the 2020-2021 school year, due to Covid-19, students at CMS had to participate in class via Zoom, a cloud-based communications service the District used. [Exhibit E, 81:3-11]. During the third interview, Ms. Joseph asked Kakoolaki how she would handle remote learning if the District needed to go back to online classes due to Covid-19 or any other reason.

[*Id.* at 70:12-22]. Kakoolaki responded that she would have her sister assist with her virtual classroom management. [*Id.* at 70:19-71:20-23; Exhibit D, 41:18-42:9]. This response was a concern for Dr. Lewis and Ms. Joseph because the District is required to comply with federal laws, namely the Federal Educational Rights and Privacy Act (FERPA) which protects students' educational records. [Exhibit D, 42:6-9; Exhibit C]. Also, having someone who is not employed by the school – i.e. someone who has not undergone training and background checks – is a student and campus safety and security risk. [*Id.*] Ms. Joseph also had concerns regarding how Kakoolaki would handle safety issues in an emergency, such as a fire drill or a lock-down, and keep her students safe and accounted for. [Exhibit E, 72:8-12]. The students Kakoolaki would be responsible for if she were hired for the position ranged in age from eleven to twelve years old. [Exhibit C, ¶3]. Kakoolaki testified that in the event of an emergency, she would "count[] off" or call the names of her students to ensure accountability. [Exhibit K, 61:21-62:15]. Kakoolaki testified she would also seek "assistance" from someone, and she admits she would possibly request an "instructional aide to be assigned to the classroom" – another employee – in order to be able to conduct the essential functions of the job. [*Id.*]

Kakoolaki further testified that not only would she need a classroom assistant for virtual classes, she would also need an assistant for in-person classes as well. [Exhibit K, 68-69]. Kakoolaki testified she would need a classroom assistant, "an adult staff with two eyeballs", to inform Kakoolaki of behavioral or participation issues, such as if a student does not have their camera on or is on their cellphone during an online class. [*Id.* at 70]. Kakoolaki further testified she would need a classroom assistant to help identify in-person class behavior,

such as if a student brought a gun to class or students were engaging in sexual activity. [*Id.* at 69:18-70:25]. Kakoolaki testified that without a classroom assistant informing her, she likely would not be aware of certain inappropriate behaviors. [*Id.*]

Four days after her third interview, on July 26, 2021, Kakoolaki finally responded to Dr. Lewis and Ms. Joseph regarding how she will "effectively perform all of the essential functions" of a social studies teacher. [Exhibit N]. Kakoolaki stated she will utilize the other teachers at the school to assist in monitoring dress code and appropriate hallway behavior. [*Id.*]  In regard to virtual instruction, Kakoolaki sated she will "need to be allowed to invite a co-host to sit in on [her] class and observe student behavior." [*Id.*] Kakoolaki stated that this co-host would need to be "familiar with the rules and be able to identify when they are being broken." [*Id.*]

On July 27, 2021, Dr. Lewis informed Kakoolaki that the sixth-grade social studies position had been offered to another candidate. [Exhibit O].

*References*

Dr. Lewis testified that the District generally required three professional references that must be "completely checked and confirmed." [Exhibit D, 33:10-17, 34:22-24]. There was one reference that was Kakoolaki's "main reference" because this reference, Dr. Pollock, was Kakoolaki's principal at the elementary school where she completed her student teaching requirement. [*Id.* at 45:3-9]. Dr. Pollock was imperative to Kakoolaki's application process, and Dr. Lewis was not able to get hold of this reference. [*Id.*] Dr. Lewis testified that it is a "concern" if she cannot reach the "person who was evaluating you the year prior who can speak to your work" and ability. [Exhibit D, 50:3-24]. Also, based on the fact that Kakoolaki

had never managed an entire classroom on her own, and had been under constant supervision, it was important for Dr. Lewis to speak with Kakoolaki's former supervisor. [Exhibit C, ¶6]. In the end, Dr. Lewis testified she could not recommend Kakoolaki for hire to the District's Human Capital Management because she "did not have all the components", namely, the reference from Ms. Pollock. [Exhibit D, 56:1-57:1].

*Teacher Chosen for the Job*

The individual who was ultimately chosen for the social studies teaching position was Ms. Judy Brown, a long-term substitute teacher with CMS. [Exhibit E, 98:25-99, Exhibit P] Ms. Brown had experience managing a classroom on her own and was familiar with the students and teachers at CMS. [Exhibit C, ¶8] Ms. Brown had worked on the CMS campus on a daily basis since she was hired in 2017. [Exhibit C, 127:3-12, 130:2-7; Exhibit P].

*Post-GISD Applications*

Kakoolaki testified she also applied for teaching positions with two other school districts – Cypress Fairbanks and Georgetown. [Exhibit K, 29:1-30:19]. She interviewed twice with Cypress Fairbanks and once with Georgetown. *Id.* She did not receive employment offers from either district. *Id.*

*Procedural Posture*

Kakoolaki filed a charge of discrimination with the EEOC on October 18, 2021, alleging discrimination because of her disability. [Dkt. No. 1, ¶6]. The EEOC issued Kakoolaki a Notice of Right to File a Civil Action on January 24, 2022. [*Id.* at ¶7]. Kakoolaki subsequently filed her complaint with the Court on April 22, 2022.

## V.     SUMMARY OF THE ARGUMENT

Kakoolaki has failed to support her claim for discrimination under the ADA with sufficient facts. She does not provide facts to show she was qualified to be a social studies teacher at CMS or that she was not hired because of her disability. The evidence shows that Kakoolaki was not able to perform the essential functions of the job with a **reasonable** accommodation. Moreover, the District was unable to contact one of Kakoolaki's references that was crucial in any decision to hire her, and another candidate came forward who had more experience managing a classroom and had worked on the CMS campus.  As such, Kakoolaki's disability discrimination claims fail and should be dismissed on summary judgment.

## VI.     ARGUMENT AND AUTHORITIES

The Court should grant GISD's motion for summary judgment because Kakoolaki cannot establish a *prima facie* case of disability discrimination. Even if she could establish a *prima facie* case, she cannot show that the reasons GISD did not hire her are pretextual.

## A. Kakoolaki Cannot Establish a *Prima Facie* Case of Disability Discrimination.

The ADA prohibits discrimination "against a qualified individual on the basis of disability" for job application procedures, hiring, termination, compensation, training, and other terms and conditions of employment. 42 U.S.C. § 12112(a); *Amsel v. Texas Water Development Board*, 464 F. App'x 395, 399 (5th Cir. 2012). To state a *prima facie* case claim for discrimination under the ADA, a plaintiff must show that: 1) she is disabled or regarded as disabled; 2) she is qualified for the job in question; 3) she suffered an adverse employment action because of her disability; and 4) she was replaced by or treated less favorably than non-

disabled employees. *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000);

*see also Amsel*, 464 F. App'x at 395.

The statute defines "qualified individual" as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applications for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. §12111(8).

To satisfy her summary judgment burden as to the first element, Kakoolaki must put

forth admissible evidence sufficient to create a material dispute as to whether she is a "qualified

individual with a disability." *Feist*, 730 F3d at 452; *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x

249, 253–54 (5th Cir. 2017). Next, Plaintiff is required to show that she is qualified under the

ADA. This requires Plaintiff to put forth evidence establishing that 1) she could perform the

essential functions of the job in spite of her disability, or 2) that a reasonable accommodation

of her disability would have enabled her to perform the essential functions of the job. *Id.* For

summary judgment purposes, the District does not dispute that Kakoolaki is an individual

with a disability. The District does, however, dispute that Kakoolaki is "otherwise qualified"

for the job of Teacher and that she was not hired because of her disability. Kakoolaki's own

testimony shows that she was not qualified for the position at GISD that she applied for. She

could neither perform the essential functions of the job in spite of her disability and a

reasonable accommodation would not have enabled her to perform the essential functions of

the job.

With respect to the essential functions of the job listed in the job description, Kakoolaki testified that she could not manage the classroom in person *or* over zoom without an assistant present to monitor the class. [Exhibit K, 70:16-71:10]. Kakoolaki admitted that without the assistance of another person to provide her access to student behavior she could not ensure that students were present on a zoom platform. [*Id.* at 68:2-21]. With respect to protecting students during a fire, Plaintiff testified that she would possibly need an instructional aide to be assigned to her classroom. [*Id.* at 61:21-62:15]. In the event of a student possessing a weapon or engaging in improper conduct, again, Plaintiff testified that she would rely on a "classroom assistant" to assist her in managing the situation.  [*Id.* at 69:18-21 and 70:1-11]. Plaintiff was asked about her ability to respond to an active shooter. [*Id.* at 63:25, 64:1-25 and 65:1-25]. Despite Kakoolaki's attempts to dissuade any concern about her ability to protect the students in this situation, Kakoolaki left more questions than answers.

Kakoolaki was given three opportunities to persuade the District that she could perform the essential functions of the job with reasonable accommodations – two times after they learned of her disability. Four days after her third interview, Kakoolaki emailed the District setting out the accommodations she would need to perform the essential functions of the job. Plaintiff requested assistive technology and the assistance of her service animal, which was not a concern for the District. [Exhibit N] But Plaintiff also said she would need a co-host to assist her in the event she was required to teach by Zoom. [Dkt. No. 1, ¶26]. Specifically, Plaintiff stated the following:

> *Regarding virtual meetings with students via Zoom, while the features are accessible to me, I will need to be allowed to invite a co-host to sit in on my class and observe student behavior. I will not expect the co-host to intervene, but only alert me to any mis-behavior, etc. This will not need to be a Certified Teacher, as I will maintain responsibility for all lessons and virtual classroom management, the co-host*

> *will only need to be familiar with the rules and be able to identify when they are being broken. Co-hosts could include office staff, para-professionals, a teaching assistant, etc. I am happy to work with management to identify the most appropriate co-host.*

[Exhibit N]. In this correspondence, Plaintiff also stated she would utilize other teachers to assist her in monitoring dress code and appropriate hallway behavior. *Id.*

Kakoolaki's requested accommodations were not reasonable as a matter of law. *Johnson v. Ben E. Keith Co.*, No. 4:16-CV-1030-A, 2017 WL 3263134, at *3 (N.D. Tex. July 28, 2017) (holding that an employee's request to hire another driver to split his duties was not reasonable as a matter of law since this was an essential function of the employee's job.). "Providing a 'reasonable accommodation' under the ADA does not require the employer to 'relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties.' " *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 254-55 (5th Cir. 2017) (quoting *Robertson v. Neromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998)). "If [the employee] can't perform the essential functions of his job absent assigning those duties to someone else, (e.g., having someone else perform his job) then [the employee] cannot be reasonably accommodated as a matter of law." *Robertson*, 161 F.3d at 295.

According to Kakoolaki's own admissions, she would need another person to fulfill the essential functions of the job of social studies teacher. Hiring a teacher's aide or classroom assistant to manage the behavior of the students or protect students in Kakoolaki's classroom would not enable Kakoolaki to perform the essential functions of her job, but would merely reassign those duties to someone else. As such, Kakoolaki is not a qualified individual under the ADA and her disability discrimination claim fails.

**B.      Kakoolaki Cannot Establish that the District Failed to Accommodate Her in Violation of the ADA.**

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an **otherwise qualified individual** with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5) (emphasis added). To prevail in a failure-to-accommodate claim, Plaintiff must show that she is a "qualified individual with a disability," the disability and its consequential limitations were "known" by the District employer, and the District failed to make "reasonable accommodations" for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

Dr. Lewis concluded Kakoolaki would be unable to perform the essential functions of the job because Kakoolaki stated she would need another person present if classes went online again, she would need to enlist help from other teachers to engage with her students, her responses to questions regarding safety and security, and her ability to manage issues such as student cell phone use and safety with students. [Exhibit D, 45:1-17; 47-48; 56:2-57:1; 111:11-112:12]. Dr. Lewis pointed out that the school did not have an employee with the capacity to be consistently available to assist in Kakoolaki's classroom. [*Id.* at 48:7-11, 97-98:17].

Failure to participate in an interactive process does not - in and of itself - constitute a violation of the ADA. *See Picard v. St. Tammany Par. Hosp.,* 423 F. App'x 467 (5th Cir.2011) (*per curiam*) (rejecting argument that failure to engage in interactive process constitutes a *per se* violation of the ADA); *see also Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 424, n.3 (5th Cir. 2014). For Kakoolaki to succeed on her failure to accommodate claim, she would have to put

forth evidence to show that a "reasonable accommodation" existed that would have allowed her to perform the essential functions of the job, such that she was "qualified."

The ADA requires employers to provide only *reasonable* accommodations. *E.E.O.C. v. Argo Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). An accommodation relieving an employee from performing essential job functions cannot be considered reasonable. *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295–96 (5th Cir. 1998); *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524-25 (N.D. Tex. 2009). The law does not require an employer to eliminate an essential function of the job or to have another employee perform the essential function for the allegedly disabled employee. *See Barber v. Nabors Drilling, U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir.1997); *see also Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir.1993); *Pedroza v. Autozone, Inc.,* 536 F.Supp.2d 679, 698-99 (W.D. Tex. 2008); *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815, 837-38 (E.D. Tex. 2004) *aff'd*, 126 F. App'x 171 (5th Cir. 2005)(internal citations omitted).The ADA does not require an employer to provide "an accommodation that would result in other employees having to work harder or longer." *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815, 837-38 (E.D. Tex. 2004) *aff'd*, 126 F. App'x 171 (5th Cir. 2005)(internal citations omitted).

In response to the fact that she cannot perform several major responsibilities required for the job of Teacher, Kakoolaki suggested that another person could perform those duties for her. This is not reasonable, and the District was not required to provide these accommodations. Kakoolaki's failure to accommodate claim should be dismissed.

**C.      Kakoolaki's Claim of Direct Discrimination Fails.**

Assuming Kakoolaki is attempting to claim that Dr. Lewis's alleged statement about hiding her blindness is direct evidence of discrimination, Kakoolaki's claim fails. First, Dr. Lewis denies making that statement. [Exhibit D, 113:7-10]. Second, even assuming  Dr. Lewis did make this statement, Kakoolaki acknowledged that the statement was made in the context of managing a classroom. [Exhibit K, 41:42-43:20]. Dr. Lewis testified that she told Kakoolaki that students will run her over if she doesn't have good control of the classroom and the policies and procedures. [*Id.* at 113:11-23]. Ms. Joseph cooroborated that telling teachers to "hide their weaknesses from the students" is something they say to teachers because kids will take advantage of them. [Exhibit. E, 83:7-19]

Any assertion by Kakoolaki that she was not hired because of her disability based solely on this statement is insufficient to establish a *prima facie* case for a direct discrimination claim under the ADA. The Fifth Circuit has defined direct evidence as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.,* 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir.2002))."The need to infer or presume the causal connection means that the statements are not direct evidence of intentional race discrimination." *Jones v. Overnite Transp. Co.,* 212 F. App'x 268, 274 (5th Cir. 2006). Kakoolaki was asked what she understood Dr. Lewis's alleged statement to mean:

> *Q.   Okay.  And what, what your inference of her statement:  How are you going to hide your blindness?*
>
> *A.   Because she was saying:  These kids are going to eat you alive.  You know, so you know, the less they know of your limitation, that's how I interpreted it. The less I have -- the less they are aware of my limitation, otherwise the kids will eat you alive.*

[Exhibit K, 43:21-44:2].

This statement does not show discriminatory animus even with the inference made by Kakoolaki. Kakoolaki's presumption regarding the meaning of Dr. Lewis's statement is insufficient to show direct discrimination. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003). Moreover, after Kakoolaki disclosed her disability to the District, the District called her references and interviewed Kakoolaki *two* more times. [*Id.* at 48:21-24] This evidence contradicts Kakalooki's direct discrimination claim and this claim should be dismissed.

**D.      Even Assuming Kakoolaki Can Demonstrate a Prima Facie Case of Disability Discrimination, She Cannot Establish that GISD's Reasons for Taking any Adverse Employment Actions Against Her Were Pretextual.**

Assuming that Kakoolaki can establish a *prima facie* case of discrimination based on her disability, the District must come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 (2003); *Calderon,* 113 Fed. App'x at 592. Once the District does so, the burden shifts back to the District to submit sufficient evidence that the District's proffered reasons are a pretext for discrimination or retaliation. *Id.* The District's burden to articulate a legitimate reason for its actions is one of production, not persuasion. *Brockie v. AmeriPath, Inc.,* 273 Fed. App'x 375, 378 (5th Cir. 2008). "The ultimate burden of persuading the trier of fact that [the District] intentionally discriminated [or retaliated] against [Kakoolaki] remains at all times with [Kakoolaki]." *Wilson v. Exxon Mobil Corp.,* 575 Fed. App'x 309, 313 (5th Cir. 2014) (internal citations omitted).

The evidence shows that Dr. Lewis was unable to reach Kakaoolaki's former supervisor that Kakoolaki listed as a reference. Dr. Lewis testified that because of this, Kakoolaki was not able to move further in the interview process. [Exhibit D, 56-57:1]. Additionally, Judy Brown, a long-term substitute for GISD applied for the position of social studies teacher at CMS. [Exhibit E, 98:25-99:25]. Unlike Kakoolaki, Ms. Brown had experience managing a classroom and working with the staff and students at CMS. The Court should grant summary judgment in favor of the District.

## VII.    CONCLUSION

Defendant Galveston Independent School District requests that the Court grant its Motion for Summary Judgment, order that Plaintiff Suzonne Kakoolaki take nothing on her claims against them, and grant the Defendant all such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: */s/ Celena Vinson*
    Celena Vinson
    SDT Bar No. 2220428
    cvinson@thompsonhorton.com
    Dena Moghtader
    SDT Bar No. 3838915
    dmoghtader@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6742
Facsimile: (713) 583-5295

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that she has conferred with Plaintiff's counsel, Dorian Vandenberg-Rodes, via telephone conference on July 7, 2023 regarding the filing of this Motion. Plaintiff **opposes** this Motion.

*/s/ Celena Vinson*

Celena Vinson
Dena Moghtader

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was

served upon counsel of record for Plaintiff by email on July 10, 2023.

Dorian Vandenberg-Rodes, Esq.
Paul R. Harris, Esq.
SHELLIST LAZARZ SLOBIN LLP,
11 Greenway Plaza, Suite 1515
Houston, Texas 77046

*/s/ Celena Vinson*

Celena Vinson
Dena Moghtader

4869-9792-9839, v. 1