United States District Court
Southern District of Texas
**ENTERED**
September 27, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| SUZONNE KAKOOLAKI, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:22-cv-00121 |
| § | |
| GALVESTON INDEPENDENT § | |
| SCHOOL DISTRICT, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Suzonne Kakoolaki ("Kakoolaki") filed this action against Galveston Independent School District ("GISD") alleging claims of disability discrimination and failure-to-accommodate under the Americans with Disabilities Act ("ADA"). GISD has moved for summary judgment. *See* Dkt. 22. After reviewing the briefing, the record, and the applicable law, I **GRANT** GISD's Motion for Summary Judgment.

## BACKGROUND

In preparation for the 2021–2022 school year, GISD posted a position for a sixth-grade social studies teacher at Central Middle School. On July 2, 2021, Kakoolaki applied for that position. A few days later, Stephanie Joseph ("Joseph"), the Social Studies Instructional Chair/Specialist at Central Middle School, reached out to Kakoolaki to schedule a virtual interview. In total, Kakoolaki interviewed three times for the position.

The first interview took place on July 6, 2021. At the end of that interview, Joseph offered Kakoolaki the teaching position, contingent on a successful background and reference check. A few hours after her interview, Kakoolaki sent an email to Joseph, informing Joseph that she had a visual impairment. Kakoolaki assured Joseph that her disability would have "no effect at all on [her] ability to

perform the essential duties of the job." Dkt. 27-11 at 1. As far as classroom management concerns, Kakoolaki explained that she had "already developed an[d] employed strategies that have proven to be highly effective" in the classroom. *Id.*

Kakoolaki suffers from cone dystrophy, a degenerative retinal disease. She is legally blind and cannot identify faces or read facial expressions. Kakoolaki can, however, see silhouettes of persons and objects. She typically uses a cane and guide dog to help her walk. Although Kakoolaki cannot read standard print, technological advances have made it possible for her to read emails and other documents when magnified.

On July 12, 2021, less than a week after Kakoolaki's initial interview with Joseph, Kakoolaki interviewed again. Kakoolaki contends that both Joseph and Central Middle School Principal Monique Lewis ("Lewis") took part virtually. Kakoolaki alleges that during the second interview, Lewis asked: "How are you going to hide your blindness? Or the kids will eat you alive." Dkt. 27 at 9–10 (citing Dkt. 27-1 at 40). GISD disputes that Lewis attended this interview or asked this question.

A third interview took place on July 22, 2021. During this interview, Joseph and Lewis "went over classroom expectations" with Kakoolaki. Dkt. 27-1 at 53. They reviewed various documents with Kakoolaki, including the job description and a document titled "Classroom and Campus Non-Negotiables." *See* Dkts. 22-12, 22-13. These documents address the essential functions of the teaching position, including responsibilities for classroom management, safety, and security. Because Kakoolaki could not read the documents over Zoom, she requested a copy be sent to her. After receiving and reviewing that documentation, Kakoolaki sent a July 26, 2021 email to Joseph explaining why she believed she could perform the essential functions of the teaching position. In that email, Kakoolaki also identified accommodations that she would need to perform the essential functions of the job. These accommodations included technological advances like screen-reading and magnification software, a closed-circuit TV, a

tablet, and training on the school's programs. Kakoolaki also indicated that she needed to bring her trained, certified guide dog to the classroom.

On July 27, 2021, Joseph informed Kakoolaki via email that the teaching position had been offered to another candidate. Kakoolaki subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right-to-sue letter from the EEOC, Kakoolaki initiated this lawsuit.

GISD has moved for summary judgment on all of Kakoolaki's claims. In doing so, GISD advances several arguments. GISD argues that Kakoolaki cannot establish a prima facie case of discrimination because she has no direct evidence of discrimination, and she has failed to show that she was qualified to perform the essential functions of a sixth-grade social studies teacher. Even if Kakoolaki could demonstrate a prima facie case of disability discrimination, GISD contends she is unable to establish that the school district's proffered reason for not hiring her was pretextual. Turning to the failure-to-accommodate claim, GISD insists that this claim fails because there is no genuine dispute of material fact regarding whether Kakoolaki was qualified to perform the essential functions of the teaching position.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. . . . An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. "[T]he non-movant must identify

3

specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (quotation omitted). In ruling on a motion for summary judgment, I must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## DISCUSSION

### A.     EVIDENTIARY OBJECTIONS

Before turning to the merits of GISD's Motion for Summary Judgment, I must address GISD's evidentiary objections. GISD complains about three exhibits attached to the declaration that Kakoolaki submitted in opposition to GISD's Motion for Summary Judgment. One of the exhibits is a screenshot from the website for the National Center for Education Statistics, providing educational statistics for GISD. *See* Dkt. 27-3. The other two exhibits are job postings for instructional aides from GISD's own website. *See* Dkts. 27-4 and 27-5. GISD asks me to strike these exhibits because they were not produced during discovery. In response, Kakoolaki argues that I may take judicial notice of these publicly available and uncontroverted documents.

Because these three exhibits do not affect the disposition of the summary judgment motion, I deny GISD's evidentiary objections as moot. *See Banks v. Bell Helicopter Textron, Inc.*, No. 4:10-cv-653, 2011 WL 13291576, at *4 (N.D. Tex. Nov. 4, 2011) ("[B]ecause [Defendant] is entitled to judgment as a matter of law even considering the objected-to evidence, the Court overrules [Defendant]'s objections as moot."); *Jones v. United Parcel Serv., Inc.*, No. 3:06-cv-1535, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

**B.     DISABILITY DISCRIMINATION**

   ***1.     Kakoolaki Has Direct Evidence of Discrimination***

"The ADA is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (quotation omitted). Title I of the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability[1] in regard to job application procedures, the hiring . . . of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To overcome summary judgment, Kakoolaki must "either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (cleaned up). "In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of discrimination." *Moore v. USDA*, 55 F.3d 991, 995 (5th Cir. 1995) (quotation omitted).

Kakoolaki contends that she has provided direct evidence of disability discrimination. In support, she points to the following question that Lewis allegedly asked Kakoolaki during her second interview: "How are you going to hide your blindness?" Dkt. 27 at 9–10 (citing Dkt. 27-1 at 40).[2] GISD argues this

---

[1] To be considered disabled under the ADA an individual must have: "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) [be] regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). GISD concedes that Kakoolaki is disabled.

[2] GISD insists that Lewis never asked this question. In support of this defense, GISD supplemented its Motion for Summary Judgment with a video recording of the July 22, 2021 interview (the third job interview), in which Lewis does not ask the question at issue. GISD misses the point. Kakoolaki does not allege that Lewis asked the question during the July 22, 2021 interview. Kakoolaki alleges Lewis asked the question during the *second* job interview on July 12, 2021. The video of the July 22, 2021 interview does nothing to

5

question is not discriminatory because "Kakoolaki acknowledged that the statement was made in the context of managing a classroom." Dkt. 22 at 21. Unfortunately for GISD, that is not the standard.

For stray remarks like the question that Kakoolaki alleges Lewis asked during the second interview, the Fifth Circuit applies the following test:

> For comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the [adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

*Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (cleaned up). Under this test, the question—"How will you hide your blindness?"—is clear evidence of discrimination.

First, blindness is *the* reason that Kakoolaki is considered disabled and thus in a protected class (the first element). Second, Lewis allegedly asked Kakoolaki this question only two weeks before Lewis decided not to hire Kakoolaki. The Fifth Circuit has held that a two-*month* time span between an adverse employment decision and an alleged discriminatory statement is close enough in time that "a reasonable juror could conclude that [the plaintiff] was terminated because of his [protected class]." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003). If two months can be proximate in time, then a mere two weeks surely satisfies the second element. *See Martin v. Helena Chem. Co.*, No. 2:13-cv-251, 2014 WL 12576293, at *4 (N.D. Tex. Sept. 3, 2014) (holding that a "relatively brief three-week time span between [the adverse] decision and [an] alleged discriminatory statement . . . creates a genuine issue of material fact as to whether the statement was proximate in time to the adverse employment decision"). Third,

---

resolve the dispute about whether Lewis asked "How will you hide your blindness?" on July 12, 2021. Lewis also claims that she did not even attend the second interview. Whether (1) Lewis attended the second interview, and (2) Lewis made the challenged statement are material facts in dispute for which summary judgment is not appropriate.

Lewis is the one who notified Kakoolaki that the "position was offered to another candidate." Dkt. 22-15 at 2. Thus, there can be no dispute that Lewis had authority over whether to hire Kakoolaki (the third element). Fourth and finally, the question was obviously related to the employment decision at issue (the fourth element) because it was asked during a job interview. In sum, the question—"How will you hide your blindness?"—is direct evidence of discrimination.

GISD's reliance on the context of Lewis's question is misplaced. It does not matter that Kakoolaki has "acknowledged that the statement was made in the context of managing a classroom." Dkt. 22 at 21. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Here, no inference is required to see the discriminatory animus in asking a potential employee: "How will you hide your blindness?" Indeed, no reasonable juror would struggle to see the discriminatory animus in asking someone how they would hide their Jewishness, their Blackness, or their gender—as if the things we cannot change about ourselves are inherently bad. Alas, GISD believes that, because Lewis asked the question in the context of classroom management, it was not discriminatory to suggest that Kakoolaki should hide her disability. But if the question requires context to make it *not* discriminatory, then a jury should make that determination. Thus, Kakoolaki has provided direct evidence of discrimination.

### 2. *Kakoolaki Is Not a Qualified Individual*

Even though Kakoolaki has presented direct evidence of discrimination, she has failed to present evidence to establish an essential element of her case: that she was a "qualified individual" under the ADA. 42 U.S.C. § 12112(a); *see also Rizzo v. Child.'s World Learning Ctrs.*, 84 F.3d 758, 763 (5th Cir. 1996) ("To prevail on her ADA claim, [a plaintiff] must prove that (1) she has a disability; (2) she was

7

qualified for the job; and (3) an adverse employment decision was made solely because of her disability.").[3]

The ADA defines "qualified individual" as an individual who "can perform the essential functions" of the desired employment position "with or without reasonable accommodation." 42 U.S.C. § 12111(8). "'Essential functions' are those duties that are fundamental to the job at issue." *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir. 1999). The ADA provides that the employer's own judgment regarding which functions are essential is to be given great weight. *See* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.").

"It is the plaintiff's burden to show that [she] is qualified under the ADA." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). To establish that she is a qualified individual, Kakoolaki "must show that either (1) [she] could perform the essential functions of the job in spite of her disability, or, if she could not, (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697 (cleaned up). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Importantly, "[t]he ADA does not require an employer to relieve an employee of any essential functions of . . . her job, modify those duties, reassign existing employees to perform those jobs,

---

[3] Because I have determined that Kakoolaki is not a qualified individual, her ADA claim fails. Accordingly, I need not discuss GISD's causation argument that Kakoolaki cannot prove that GISD took an adverse employment action against her because of her disability.

or hire new employees to do so." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quotation omitted).

As described by GISD, the job responsibilities of a social studies teacher include, in part, "[m]anag[ing] student behavior" and "[taking] all necessary and reasonable precautions to protect students, equipment, materials, and facilities." Dkt. 22-13 at 3. During her deposition, Kakoolaki admitted, under oath, that she could not perform these classroom management tasks alone. Due to her poor vision, she cannot determine what exactly students are doing in the classroom. *See* Dkt. 22-11 at 19. By way of example, Kakoolaki readily acknowledged that, in a live classroom setting, she is unable to determine whether a student possesses a weapon, is engaged in sexual activity, is looking at a cell phone, is cheating, or is otherwise misbehaving. *See id.* at 19, 21.

Kakoolaki argues that she utilizes "validated strategies" to "create student engagement and minimize behavioral issues." Dkt. 27 at 19. These strategies, she says, include "continually moving about the classroom and interacting with all students; seating children with behavioral issues close; assigning tasks to students in the classroom; collecting cell phones; and designing tests to eliminate cheating." *Id*. Although these tactics are sure to provide some assistance, the fact remains that Kakoolaki cannot, by herself, manage student behavior. She testified as follows:

> Q. If a student brought a gun to class, how . . . would you become aware of that?
> A. Well, I'd have, hopefully again, a classroom assistant who could identify that.
> Q. Okay. And if the students were engaging in improper sexual activity, how . . . would you know about that?
> A. If it's not auditory, then again, classroom assistant.
> Q. Okay. So would you rely on another student to –
> A. I said "classroom assistant," so an adult staff with two eyeballs.
> Q. Okay. So in both settings [virtual and the in-classroom setting] you would need another body to tell you what was going on?
>     MR. HARRIS: Objection, form.

9

>    A.   For certain behaviors, yes.
>
>    \*\*\*
>
>    Q.   So you'd have to have the assistant there all the time in case the behavior presented itself, correct?
>
>    A.   Likely, yes.

Dkt. 22-11 at 19.

Because managing student behavior is an essential function of the job that Kakoolaki is unable to perform by herself, I must determine whether Kakoolaki has offered a reasonable accommodation that would enable her to manage the classroom effectively. To the extent Kakoolaki suggests that GISD hire or assign an assistant to be present in the classroom at all times to monitor the students and alert her of any student misbehavior, such a proposal is, as a matter of law, an unreasonable accommodation. *See Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) ("If [an employee] can't perform the essential functions of his job absent assigning those duties to someone else, (e.g., having someone else perform his job) then [the employee] can not be reasonably accommodated as a matter of law."); *Phillips v. Jackson Pub. Sch. Dist.*, No. 3:22-cv-223, 2023 WL 7414484, at \*8 (S.D. Miss. Nov. 9, 2023) ("[A]ssigning plaintiff a full-time assistant was not a reasonable accommodation.").

Kakoolaki cites to GISD's website to establish that GISD had one full-time instructional aide for every 7.54 teachers during the 2021–2022 school year and that GISD posted job openings for instructional aides that could have supported her proposed accommodations. *See* Dkt. 27 at 14. These statistics, however, do not help Kakoolaki escape the fact that numerous courts, both inside and outside the Fifth Circuit, have expressly held that hiring a full-time instructional or teacher's aide is considered an unreasonable accommodation under the ADA. In *Buckner v. West Tallahatchie School District*, for example, the plaintiff, a teacher with a visual impairment, requested a teacher's assistant be placed in his classroom to help monitor the students. No. 3:19-cv-264, 2022 WL 1815987, at \*7 (N.D. Miss. June 2, 2022). The district court flatly rejected that contention: "Because such an

10

accommodation would, at a minimum, leave 'performance of . . . essential duties to other employees,' such is beyond the requirements of the ADA." *Id.* (quoting *Pegues v. Miss. State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018)). Similarly, in *Claiborne v. Recovery School District*, a paraprofessional who could not perform the essential functions of her job proposed that the school district could have reasonably accommodated her disability by allowing her to swap assignments with a work colleague. 690 F. App'x 249, 255 (5th Cir. 2017). The Fifth Circuit swiftly rejected that argument, holding that the proposed accommodation "would amount to a reassignment of her responsibilities," and "such measures are not required by the ADA." *Id.*

Kakoolaki also proposes that GISD could reasonably accommodate her disability by videotaping the classroom's activities and allowing her to review the video after class. This proposed accommodation fails because it would not enable Kakoolaki to perform the essential functions of a teacher. A teacher must possess the ability to quickly address behavioral issues that arise in the classroom. Having Kakoolaki review a videotape after the school day has ended to detect behavioral issues would not allow her to effectively manage the classroom in real time, which is an essential function of the job.

As part of their core job responsibilities, GISD teachers are also required to supervise the school's hallways during classroom changes and enforce the dress code. *See* Dkt. 22-12 at 7. Kakoolaki concedes that these are required parts of the teaching job. *See* Dkt. 22-11 at 16. To fulfill her obligation to monitor dress code and hallway behavior, Kakoolaki acknowledges that she would need other teachers to provide her with assistance. *See* Dkt. 27-2 at 4. In return, Kakoolaki proposes volunteering to assist those teachers in other ways, such as "grading, administrative tasks, helping host parent-teacher night, or other incidental duties of teachers." *Id.* Assigning other teachers to monitor the hallways for dress code violations and student misconduct in exchange for Kakoolaki performing their duties is nothing more than a reassignment of essential functions to other

employees. The Fifth Circuit has unequivocally held that such an accommodation is unreasonable. *See Thompson*, 2 F.4th at 467; *Claiborne*, 690 F. App'x at 255.[4]

All in all, I conclude that summary judgment is appropriate on Kakoolaki's disability discrimination claim because there is no genuine issue of material fact as to whether she was a qualified individual for a teaching position at GISD.

## C.  FAILURE-TO-ACCOMMODATE

GISD also moves for summary judgment on Kakoolaki's failure-to-accommodate claim. "A failure-to-accommodate claim [under the ADA] requires a showing that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (quotation omitted). The "qualified individual" requirement is the same under a failure-to-accommodate claim as a disability discrimination claim. *See id.* at 324 ("[T]o avoid summary judgment on the qualified-individual issue [for a failure-to-accommodate claim], [plaintiff] must show either (1) that he could perform the essential functions of his job in spite of his disability or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." (quotation omitted)).

As explained above, Kakoolaki is not a qualified individual for a teaching position at GISD. Thus, for the same reasons Kakoolaki's disability discrimination claim fails, her failure-to-accommodate claim cannot survive summary judgment.

---

[4] GISD also contends that it would be difficult for Kakoolaki to single-handedly address an emergency situation—such as an active shooter or a fire—which would require an immediate evacuation of school premises. *See* Dkt. 22 at 12 (Joseph "had concerns regarding how Kakoolaki would handle safety issues in an emergency, such as a fire drill or a lock-down, and keep her students safe and accounted for."). Along these same lines, GISD argues that Kakoolaki has not presented a reasonable accommodation for handling such emergencies. Having determined that managing student behavior is an essential job function that Kakoolaki cannot perform unless GISD hires another person or shifts Kakoolaki's job responsibilities to someone else, I do not reach the parties' arguments about whether Kakoolaki is qualified to protect students.

*See id.* at 323 ("We only address the first element because it is a threshold determination. If [plaintiff] is not a qualified individual, our inquiry ends.").

## CONCLUSION

For the reasons explained above, GISD's Motion for Summary Judgment (Dkt. 22) is **GRANTED**.

SIGNED on this 27th day of September 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE