𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

United States Courts
Southern District of Texas
FILED
April 24, 2025
Nathan Ochsner, Clerk of Court

No. 24-40710
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
April 2, 2025
Lyle W. Cayce
Clerk

SUZONNE KAKOOLAKI,

          *Plaintiff—Appellant*,

*versus*

GALVESTON INDEPENDENT SCHOOL DISTRICT,

          *Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:22-CV-121

---

Before DAVIS, STEWART, and SOUTHWICK, *Circuit Judges*.
PER CURIAM:*

    Suzonne Kakoolaki applied for a teaching position at Central Middle School in Galveston County. She left her first interview with a conditional job offer subject to background and reference checks. But after voluntarily disclosing that she is legally blind, Kakoolaki was called back twice for more interviews. Another applicant got the job. Kakoolaki responded by suing

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-40710

Galveston Independent School District (GISD) under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* She now appeals the district court's order dismissing her case on summary judgment. We AFFIRM.

Kakoolaki has cone dystrophy, rendering her legally blind. Although Kakoolaki can make out silhouettes, she cannot identify faces or facial expressions. Kakoolaki cannot see standard print, but she can read extremely magnified text on a screen.

In July 2021, Kakoolaki participated virtually in three interviews for the sixth-grade social-studies teaching position. Stephanie Joseph, an instructional specialist at the school, extended her a contingent offer at the end of the first. Hours later, Kakoolaki sent an email to inform Joseph of her visual impairment. In that email, she assured Joseph that her disability "has no effect at all on [her] ability to perform the essential duties of the job." And she welcomed the opportunity to answer "any questions at all about how [her visual impairment] will impact [her] ability to" teach at GISD.

Joseph invited her to a second interview the following week.[1] Kakoolaki addressed the limitations associated with her disability in that interview. But Joseph still had lingering questions after that second interview, so she invited Kakoolaki to partake in a third.

The third interview was conducted like a "lecture." Joseph and Central Middle School Principal Monique Lewis "went over classroom expectations" with Kakoolaki. They covered the job description (which was

---

[1] She contends that both Joseph and Central Middle School's principal, Monique Lewis, served as her interviewers. She further alleges that Lewis asked her: "How are you going to hide your blindness?" GISD disputes that happened, arguing Lewis didn't even attend the second interview. The district court agreed with Kakoolaki, considering it direct evidence of discrimination. This dispute isn't pressed on appeal.

accessible to Kakoolaki before she applied) and the contents of several documents describing "the functions of the job." For instance, GISD's classroom-teacher job description listed the position's "Major Responsibilities and Duties," organized under five categories; under the "Classroom Management and Organization" category, GISD teachers are responsible for "[m]anag[ing] student behavior in accordance with Student Code of Conduct and student handbook" and "[t]ak[ing] all necessary and reasonable precautions to protect students, equipment, materials, and facilities." At the end of the interview, Kakoolaki told them that she couldn't see the information from which they were reading, despite it being shared on her screen, but that she'd "like to be able to review it." Joseph emailed her the materials after the interview.

On July 26, Kakoolaki responded to Joseph's email. Kakoolaki restated her belief that that she could "effectively perform all of the essential functions" required of the job. In order to perform those essential functions, she requested several accommodations. Only two of those accommodations are relevant to this appeal: providing her a full-time classroom aide and reassigning her hallway supervision duties to other teachers. The next day, Kakoolaki received an email from Lewis notifying her that the "position was offered to another candidate."

In October 2021, Kakoolaki filed a charge with the Equal Employment Opportunity Commission (EEOC). In January 2022, the EEOC issued a right-to-sue letter. Three months later, she brought this discrimination-in-hiring action against GISD. She alleges two claims under the ADA: disability discrimination and failure to accommodate.

No. 24-40710

We review a grant of summary judgment de novo, asking whether a genuine dispute exists over any material fact.[2] All facts and inferences are construed in the light most favorable to the nonmoving party.[3] "We 'may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court.'"[4]

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability" through, *inter alia*, a potential employer's hiring decisions.[5] An ADA plaintiff bears the burden of proving that she's "qualified"—that is, "with or without reasonable accommodation, [she] can perform the essential functions" of the job.[6]

Essential functions are those duties "fundamental" to a job such that "removing the function would fundamentally alter th[e] position."[7] The ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential."[8] Following that statutory directive, this Court has considered "written job descriptions, the amount of time spent on the job performing the function, and the

---

[2] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 466 (5th Cir. 2021); FED. R. CIV. P. 56(a).

[3] *Thompson*, 2 F.4th at 466.

[4] *Id.* (quoting *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 682 (5th Cir. 2020)).

[5] 42 U.S.C. § 12112(a).

[6] *Id.* at § 12111(8). To prevail on either of her claims, Kakloolaki must show that she is "qualified" under the ADA. *See Thompson*, 2 F.4th at 467, 470.

[7] 29 C.F.R. § 1630.2(n)(1); *id.* at app. § 1630.2(n); *see also Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017).

[8] 42 U.S.C. § 12111(8).

consequences of not requiring the employee to perform the function."[9] This inquiry is fact-intensive.[10]

Direct supervision of middle school students, both in classroom and during passing periods, is an essential function of this particular teaching position. This conclusion is supported by Kakoolaki's accommodation request for a full-time aide, indicating that classroom teachers spend a considerable amount of time supervising students. GISD's job description provides further support. The posting states that a primary responsibility of teachers is classroom management; given the visual demands of supervising middle-school students, no reasonable jury could find that direct supervision is not an essential function of this position. Therefore, we agree with the district court that the job necessarily entails monitoring student behavior.

As the district court noted, "[Kakoolaki] cannot determine what exactly students are doing in the classroom." And Kakoolaki testified that, in a classroom setting, she would be unable to determine whether a student possesses a weapon, is engaged in sexual activity, is looking at a cell phone, is cheating, or is otherwise misbehaving. Thus, by her own admission, Kakoolaki cannot, by herself, directly supervise the students.

Kakoolaki proffers two accommodations for the supervisory duty she cannot perform, neither of which is reasonable. Kakoolaki first requests a full-time classroom aide and, second, assistance from neighboring hallway teachers to help alert her to non-audible behavioral violations. But to grant either request would amount to a reassignment of a teacher's primary

---

[9] *Thompson*, 2 F.4th at 467.

[10] *Credeur*, 860 F.3d at 792 ("Fact-finders must determine whether a function is 'essential' on a case-by-case basis." (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014))).

5

No. 24-40710

responsibility to monitor student behavior. As a matter of law, those requests are unreasonable.[11] "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[12] Accordingly, there is no genuine fact issue that a reasonable accommodation would have enabled her to perform the essential functions of the sixth-grade teaching position. Kakoolaki has therefore failed to establish that she's qualified under the ADA, so both of her claims necessarily fail.

AFFIRMED.

---

[11] *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) ("[T]he law does not require an employer to transfer from the disabled employee any of the essential functions of his job" (quoting *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997))).

[12] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).